E-FILED
Tuesday, 17 November, 2026 03:17:46 PM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| ZACCHARY DAVID;<br>ELIZABETH HESS,<br>Plaintiffs,<br><br>v.<br><br>SODERSTROM DERMATOLOGY CENTER S.C.,<br>Defendant. | Case No. 1:26-cv-01133-JEH-RLH |

## Opinion & Order

Now before the Court is the Defendant's Motion to Dismiss.[1] (D. 18; D. 19). For the reasons set forth *infra*, the Defendant's Motion to Dismiss is GRANTED in part and DENIED in part. The Court dismisses without prejudice Counts II, III, IV, V, and VII. Counts I and VI may proceed. The Plaintiffs shall have leave to amend their Complaint within 14 days if they believe they can state a claim in accordance with this Order.

### I

On April 7, 2026, the Plaintiffs, Zacchary David and Elizabeth Hess (David and Hess, or Plaintiffs), individually and on behalf of all others similarly situated,[2] commenced this lawsuit by filing their Complaint against the Defendant, Soderstrom Dermatology Center S.C. (Soderstrom), alleging Soderstrom disclosed Plaintiffs' personal health information to unauthorized third parties. (D. 1). On August 5, 2026, Soderstrom filed its Motion to Dismiss (D. 18; D. 19). On

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

[2] While the Plaintiffs' Complaint discusses the potential for a class action, the Court has not received a Motion to Certify or ruled on certification and declines to address the issue here.

September 18, 2026, the Plaintiffs responded. (D. 22). On September 29, 2026, Soderstrom replied. (D. 25). The matter is now fully briefed.

## II

According to the Plaintiffs' Complaint, [3] Soderstrom is a corporation formed and headquartered in Illinois offering a variety of medical treatments, including cosmetic surgery, Botox, laser treatments, prescribing medication, and more. Soderstrom owns, controls, and maintains https://core-dermatology.com (the Website). The Website requires individuals to share highly sensitive Private Information in order to receive a variety of medical treatments. The Plaintiffs allege that Soderstrom disclosed the Plaintiffs' individually identifiable health information (IIHI) and protected health information (PHI) (collectively, Private Information) from the Website to unauthorized third parties including Google LLC, Liine, Inc., and Meta Platforms, Inc. (collectively, Information Recipients). In turn, the Information Recipients use the Plaintiffs' Private Information to improve advertisers' ability to target specific demographics and sell such information to third-party marketers who target the Plaintiffs online. The Plaintiffs' Private Information includes the user's searches for specific conditions or treatment, booking information, IP addresses, unique account identifiers, account numbers, and the content of the communication (i.e., the buttons, links, pages, and tabs they click and view).

Soderstrom installed and implemented "pixels" and similar tracking technologies (collectively, Tracking Technologies), which automatically captured the Plaintiffs' communications and inputs and sent the Plaintiffs' Private Information to Information Recipients without the Plaintiffs'

[3] The Court assumes, without finding, that the information in the Plaintiffs' Complaint is true for the purpose of ruling on Soderstrom's Motion to Dismiss. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) ("In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff.").

knowledge or authorization.[4] Soderstrom utilized Tracking Technologies since at least 2014 and installed Tracking Technologies on many (if not all) of the pages within the Website. In addition to disclosing the user's Private Information, the Tracking Technologies also disclose unique account identifiers linked to the user's account. With this information, the Information Recipients link the Private Information to the user's real-life identity. The Tracking Technologies, in essence, transform the Plaintiffs' devices into "tapped phones" when the Plaintiffs use the Website. Soderstrom used Tracking Technologies to increase its revenues and profits, bartering with the Plaintiffs' Private Information.

**A**

David, who was a patient of Soderstrom, utilized the Website on numerous occasions beginning on or around May 9, 2025. David primarily used Soderstrom's services to receive treatment for acne. David utilized the Website on his personal electronic devices, including his cell phone, to research treatment options, schedule appointments, create a patient portal, and access his patient portal to attend telehealth appointments. David neither consented to third parties using his Private Information nor authorized Soderstrom to enable third parties to access, interpret, and use such private information.

When David accessed the Website from his phone, David had Facebook, TikTok, Instagram, and Google accounts, and he accessed the Website while logged into his accounts on the same device. During his research, David viewed video content posted on Soderstrom's Website and social media accounts.

---

[4] Note, Soderstrom disputes that the disclosures were made without the Plaintiffs' knowledge or authorization because of the pop-up warnings on the Website requiring users to consent to certain tracking activity. While both parties agree some form of pop-up warning existed on the Website, the parties dispute the scope, frequency, and locations of the pop-up warning on the Website. These are factual disputes the Court will not address at this time. And, as required at the motion-to-dismiss stage, the Court will view the pleadings in the Plaintiffs' favor.

After providing his Private Information to Soderstrom through the Website, Davis immediately began seeing targeted health ads for other health and beauty products and services, including treatment for acne. David trusted that the Private Information that he provided to Soderstrom would be safeguarded according to Soderstrom's policies, industry standards, and state and federal law. David would not have provided his Private Information to Soderstrom if he knew Soderstrom would not keep his Private Information confidential.

David was injured by Soderstrom's unauthorized disclosure of his confidential medical information. Specifically, David was subjected to unsolicited, targeted advertising related to acne, causing significant mental distress arising from the implication that advertisers were aware of his medical condition and fear that his friends, family, or colleagues might see these advertisements and thereby learn of his medical conditions.

**B**

Hess utilized the Website on her personal electronic devices, including her cell phone, on numerous occasions beginning on or around 2023. Hess primarily used Soderstrom's services to research treatment options and search for doctors for treatment of a rash, removal of a mole, Botox injections, and treatment for Rosacea. Hess disclosed highly sensitive health information to Soderstrom.

When Hess accessed the Website from her phone, Hess had Facebook, Instagram, and Google accounts, and she accessed the Website while logged into her accounts on the same device. During her research, Hess viewed video content posted on the Website and social media accounts. After providing her Private Information to Soderstrom through the Website, Hess immediately began seeing targeted health ads for related health products and services. Hess trusted that the Private Information she provided to Soderstrom would be safeguarded according to Soderstrom's policies, industry standards, and state and federal law. Hess would not have

provided her Private Information to Soderstrom if she knew Soderstrom would not keep her Private Information confidential.

Hess was injured by Soderstrom's unauthorized disclosure of her confidential medical information. Specifically, Hess was subjected to unsolicited, targeted advertising related to the specific medical conditions she researched, causing significant mental distress arising from the implication that advertisers were aware of her mental conditions and fear that her friends, family, or colleagues might see these advertisements and thereby learn of her medical conditions.

**C**

Plaintiffs' Complaint includes seven counts: (1) negligence, (2) invasion of privacy, (3) breach of contract, (4) breach of implied contract, (5) unjust enrichment, (6) violations of the Electronic Communications Privacy Act (ECPA), and (7) violations of the Illinois Personal Information Protection Act (PIPA).[5] (D. 1 at ECF pp. 48–64). Soderstrom seeks dismissal of Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (D. 19 at ECF p. 1).

**III**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is a challenge to the court's subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "The Constitution limits the jurisdiction of the federal courts to 'Cases' and 'Controversies.'" *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (citing U.S. CONST. art. III, § 2.). "Standing is an essential component of the case-or-controversy requirement." *Id.* (citing *Lujan v. Def's of Wildlife*, 504 U.S. 555, 560 (1992)). A plaintiff must have "standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged

[5] The Court applies Illinois substantive law to causes of action arising under state law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state . . . There is no federal general common law.").

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Flynn*, 39 F.4th at 952 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 33 (2016)). An "injury in fact" is one that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citing *Friends of the Earth, Inc. v. Laidlaw Env't. Servs., Inc.*, 528 U.S. 167, 180 (2000)). "As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing the elements of Article III standing." *Id.* (citing *Lujan*, 504 U.S. at 561)).

The Seventh Circuit recognizes two forms of standing challenges: facial and factual. *Flynn*, 39 F.4th at 952. A court must first identify whether a challenge to subject matter jurisdiction is facial or factual. *Silha*, 807 F.3d at 173 (citing *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir 2009)). "[A] facial challenge argues that the plaintiff has not sufficiently *alleged* a basis of subject matter jurisdiction." *Id.* (emphasis in original) (internal citation omitted). "In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Id.* A factual challenge asserts that no standing exists in fact. *Flynn*, 39 F.4th at 952. "In response to a factual challenge, the plaintiff can no longer rest on the allegations in the complaint but must adduce specific *evidence* to satisfy each of the elements necessary to establish his standing to sue." *Id.* (emphasis in original).

**A**

The Court starts with Soderstrom's facial challenge. Soderstrom argues the Complaint should be dismissed pursuant to Rule 12(b)(1) because the Plaintiffs' Complaint is "conclusory, bare, and altogether insufficient to facially establish standing." (D. 1 at ECF p. 5).

When viewing the facts in the Plaintiffs' favor, the Plaintiffs sufficiently plead injuries that are fairly traceable to Soderstrom. *Doe v. Genesis Health Systems* is instructive here. *See* No. 4:23-cv-04209-JEH, 2025 WL 1000192 (C.D. Ill Mar. 18, 2025). In *Genesis Health*, the plaintiff had standing to proceed with her claim against the defendant, her healthcare

provider, for various wrongful disclosures of the plaintiff's personally identifiable information (PII) and personal health information (PHI) through tracking technology on the defendant's website. *Id.* at *1, *3. In *Genesis Health*, the plaintiff sufficiently pleaded an injury: the plaintiff's PII and PHI were unlawfully disclosed. *Id.* at *3. The plaintiff's injury was particularized because she plead "that the disclosure was of *her* information." *Id.* The plaintiff's injury was concrete because, "[a]t common law, American courts have traditionally recognized the disclosure of private information as part of the 'umbrella of the tort of invasion of privacy.'" *Id.* (citing *Florence v. Ord. Express, Inc.*, 674 F.Supp.3d 472, 479 (N.D. Ill. 2023)). Moreover, the plaintiff pleaded that the unlawful disclosure occurred because of the defendant's tracking technology on its website. *Id.* In *Genesis Health*, the plaintiff's injury was "sufficiently concrete, and her alleged injury [was] fairly traceable to Genesis, whose alleged conduct caused the disclosure," and the plaintiff's claim "is likely to be redressed by a favorable judicial decision." *Id.*

Here, the Plaintiffs' Complaint includes at least as much information as the *Genesis Health* Complaint, so like the plaintiff in *Genesis Health*, the Plaintiffs have standing to proceed with their claims against Soderstrom for unlawful disclosure of their Private Information due to Soderstrom's use of Tracking Technology. Specifically, David and Hess identify the same particularized injury as the *Genesis Health* plaintiff: their Private Information was unlawfully disclosed. *See* (D. 1 at ECF p. 1) ("This is a class action lawsuit for damages and injunctive relief arising from Defendant's unlawful practice of disclosing Plaintiffs' and Class members' individually identifiable health information ("IIHI") and protected health information ("PHI") (referred to collectively as "Private Information") to unauthorized third parties"). Like the *Genesis Health* plaintiff, the Plaintiffs' injuries were sufficiently particularized and concrete: both David and Hess plead *their* Private Information was unlawfully disclosed. *See id.* at ECF pp. 11, 13. And again like the *Genesis Health* plaintiff, the

Plaintiffs clearly plead that Soderstrom unlawfully disclosed their Private Information through the use of Technology Tracking on the Website, satisfying the traceability requirement. *See id.* at ECF pp. 12, 14. The Plaintiffs have standing because their injuries were particularized and concrete, their alleged injuries are fairly traceable to Soderstrom, and their claim is likely to be redressed by a favorable judicial decision. *See Genesis Health*, No. 4:23-cv-04209-JEH, 2025 WL 1000192, at *3.

**B**

Soderstrom also raises a factual challenge arguing the Complaint should be dismissed pursuant to Rule 12(b)(1) because several facts defeat standing. Specifically, Soderstrom raises four facts it alleges defeat standing:

> First, [Soderstrom] has not located a matching Website form submission for either named Plaintiff using the information currently available . . . Second, during the relevant time period, the Website only had two videos available for viewing, which were related to Emsculpt and Emsella—not acne, rash, psoriasis or Botox videos matching the activity described in the Complaint . . . Third, Plaintiff Hess alleges that she visited the Website in 2023, but the [Soderstrom] name and domain were not in use at that time . . . Fourth, the patient portal registration and telehealth appointment referenced by Plaintiff David occurred through platforms separate from [Soderstrom]'s public website.

(D. 19 at ECF pp. 16–17). Soderstrom argues that in light of these facts, the "Plaintiffs factually have no standing because they have not alleged any injuries that are fairly traceable to [Soderstrom]." (D. 19 at ECF pp. 4–5). Soderstrom's four facts come from the Declaration of Kim Heider, Soderstrom's Marketing Manager. While Soderstrom is correct that the Court

may consider the Declaration of Kim Heider,[6] the Declaration of Kim Heider, even assuming it is true, does not defeat the Plaintiffs' standing.

First, even if no matching Website form submissions exist for either named Plaintiff, the Plaintiffs still have standing based on their Website engagement. Neither the Plaintiffs' Complaint, the Declaration of Kim Heider, nor Soderstrom's Motion to Dismiss defines the term "Website form submissions." The Court understands "form submission" to "refer to the process where a user completes a form and sends the entered information to a web server for processing."[7] Here, whether the Plaintiffs formally input information to the Website leaving a form submission is not determinative regarding the Plaintiffs' standing. The Plaintiffs contend that the information disclosed during the Plaintiffs' browsing on the Website is the Private Information, not information submitted on the Website. *See* (Doc. 1 at ECF p. 31) ("In sum, Plaintiffs and Class members provided their Private Information to Defendant by browsing the Website, reviewing conditions and available treatments, scheduling appointments, researching issues . . .").

Second, the Website only having two videos, which were related to Emsculpt and Emsella, does not disrupt the Plaintiffs' standing. Soderstrom seems to be arguing that because the only two videos on the Website were related to Emsculpt and Emsella, not the aliments complained of by the Plaintiffs, the Plaintiffs must not have watched the videos. This is a logical leap the Court will not take. The Plaintiffs' complaint does not specify the subject matter of the videos. *See id.* at ECF p. 10 ("During his research, Plaintiff David viewed video content posted on Defendant's Website and social media

---

[6] "The law is clear that when considering a motion that launches a factual attack against jurisdiction, '[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (citing *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008)).

[7] *Form Submission*, PERISCOPE, https://www.periscopemedia.co/glossary/what-is-a-form-submission.

accounts."); *id.* at ECF p. 13 ("During her research, Plaintiff Hess viewed video content posted on Defendant's Website and social media accounts."). The Court fails to see how Soderstrom declaring that two videos existed about Emsculpt and Emsella affects whether the Plaintiffs have standing.

Third, even if the Soderstrom name and domain was not in use in 2023, Hess still has standing based on her engagement with the Website in 2026, which Soderstrom does not challenge. *See id.* at ECF p. 12 ("Plaintiff Hess's most recent visit to Defendant's Website was in January 2026. In the process of using Defendant's services, Plaintiff Hess disclosed highly sensitive IIHI and PHI to Defendant.").

Fourth, even if the patient portal registration and telehealth appointment occurred through platforms separate from the Website, David still has standing based on his engagement with the Website. David pleads that he used the Website "to research treatment options," in addition to creating a patient portal, scheduling appointments, and accessing his patient portal to attend telehealth appointments. *Id.* at ECF p. 10. Because David used the Website, at the very least to research treatment options and watch video content, Soderstrom's factual assertion does not disrupt David's standing.

In arguing that the Plaintiffs factually have no standing, Soderstrom cites only one authority: *Hannant v. Culbertson*. Soderstrom argues for dismissal just as the ECPA claim was dismissed in *Hannant* where the plaintiff alleged the defendant "disclosed information like [the plaintiff's status] as a patient and her patient portal activity, but provide[d] no detail as to what information was disclosed that demonstrated her patient status or what activities she took with respect to the patient portal." (D. 9 at ECF p. 5) (quoting *Hannant v. Culberston*, No. 4:24-cv-04164-SLD-RLH, 2025 WL 2413894, at *5 (C.D. Ill. Aug. 20, 2025)). Soderstrom does not explain how *Hannant*, which partially dismissed the plaintiff's complaint for failure to state a claim, supports Soderstrom's subject-matter arguments regarding factual disputes to the Plaintiffs'

standing. Moreover, the Court agrees with the Plaintiffs that the Plaintiffs' Complaint factually differs from the *Hannant* complaint because David and Hess allege concrete use of the Website, not mere vague generalities like in *Hannant.*[8]

In conclusion, the Plaintiffs adequately plead standing, and Soderstrom's factual assertions do not disrupt the Plaintiffs' standing. The Plaintiffs' Complaint is not subject to dismissal under Federal Rule of Civil Procedure 12(b)(1) because the Plaintiffs adequately plead standing.

**IV**

Federal Rule of Civil Procedure 12(b)(6) governs whether a complaint fails to state a claim. FED. R. CIV. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) instructs that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Id.*

---

[8] At the end of Soderstrom's subject-matter section of the Motion to Dismiss, Soderstrom argues that injunctive and declaratory relief is inappropriate but provides no authority supporting the argument. *See U.S. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).").

**A**

Soderstrom argues that Plaintiffs' negligence claim should be dismissed under Rule 12(b)(6) for failure to state a claim. (D. 19 at ECF pp. 6–7). In Illinois, "To state a claim for negligence, a plaintiff must allege facts showing that (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach was the proximate cause of plaintiff's injuries." *Flores v. Aon Corp.*, 2023 IL App (1st) 230140 at ¶ 23, 242 N.E.3d 340, 353 (Ill. App. Ct. 2023) (citing *Cowper v. Nyberg*, 2015 IL 117811 at ¶ 13, 28 N.E.2d 768, 772 (Ill. 2015)). Soderstrom argues that the Plaintiffs fails to plausibly plead duty, injury, and causation.

Regarding duty, Soderstrom argues it "did not owe any duty to Plaintiffs because the information allegedly disclosed is not PHI and is not protected under HIPAA." (D. 19 at ECF p. 7). Soderstrom seemingly concedes that it would owe the Plaintiffs a common law duty to protect PHI, conflating a statutory duty under HIPAA with an Illinois common-law duty.[9] The question before the Court, then, is whether the

[9] Soderstrom does not argue that no common law duty exists for a medical provider to protect personal information. *See* Doc. 19 at ECF pp. 6–7. This Court is skeptical that such a *common law* duty exists. *See Doe v. Genesis Health Sys.*, No. 4:23-cv-04209, 2025 WL 1000192, at *4 (C.D. Ill. Mar. 18, 2025) ("The Illinois Supreme Court has not recognized a duty to safeguard personal information"). The Plaintiffs in their Response, however, ask this Court to join its sister courts in creating a new Illinois common law duty based on the statutory duty imposed by PIPA to exercise reasonable care in protecting patients' Private Information. *But see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its legislature in a statute or by its highest court in a decision is not a matter of federal concern."); *Millennium Park Joint Venture*, 241 Ill.2d 281, 305, 948 N.E.2d 1, 17 (Ill. 2010) (internal citations omitted) ("Common law rights and remedies remain in full force in this state unless expressly repealed by the legislature or modified by court decision. 'Common law' is simply the body of law derived from judicial decisions rather than from statutes or constitutions."). Because Soderstrom concedes such a common law duty exists, it would be inappropriate for this Court to make an advisory opinion on the existence of such a common law duty. *See* U.S. CONST. art. III, § 2, cl.1. This Order, however, should not be construed to endorse the existence of an Illinois common law duty for medical providers to safeguard personal information.

Plaintiffs adequately plead that the information allegedly disclosed qualifies as PHI.

HIPAA's Privacy Rule equates protected health information ("PHI") with individually identifiable health information ("IIHI") and defines IIHI as:

> [I]nformation that is a subset of health information, including demographic information collected from an individual, and:
>
> (1) Is created or received by a health care provider . . . and
>
> (2) Relates to past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and
>
> (i) That identifies the individual; or
>
> (ii) With respect to which there is a reasonable basis to believe
>
> the information can be used to identify the individual.

45 C.F.R. § 160.103. Many courts have held that information entered on a health provider's website constitutes PHI. *See generally Allen v. Midwest Express Care, Inc.*, No. 24-cv-05348, 2025 WL 2240253 (N.D. Ill. Aug. 6, 2025) (finding plaintiff adequately pleaded defendant disclosed PHI using tracking technologies when plaintiff used defendant's website "to request and book doctor's appointments, search and communicate information concerning specific medical conditions, her patient status, treatments sought, and locations where [the plaintiff] received healthcare treatment."); *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24 C 1404, 2024 WL 4119153 (N.D. Ill. Sep. 9, 2024) (finding plaintiff adequately pleaded defendant disclosed PHI using tracking technologies when plaintiff used defendant's website to "search for information about a specific dental condition, locate providers, and schedule appointments and procedures.").

Here, the Plaintiffs plead the following activity using the Website: research potential treatments, seek healthcare providers, create accounts, schedule appointments, attend telehealth appointments, participate in Soderstrom's health screenings, and purchase a subscription plan. (D. at ECF pp. 10–14, 61). Soderstrom attempts to downplay the information that Soderstrom received through the Website, suggesting the sensitive information was limited to the Plaintiffs' names, addresses, telephones, and dates of birth. (D. 19 at ECF p. 8). This is a factual dispute, and at the motion to dismiss stage, the Court must assume the facts are true and make all reasonable inferences in the Plaintiffs' favor. Favoring the Plaintiffs' pleadings, the allegedly disclosed information qualifies as PHI under HIPAA's Privacy Rule—the information is received by a healthcare provider, relates to health conditions of an individual, and identifies the individual. *See* 45 C.F.R. § 160.103. The Plaintiffs adequately plead that the allegedly disclosed information qualifies as PHI, so Soderstrom's challenge to "duty" fails.

Regarding injury and breach, Soderstrom argues that the "Plaintiffs have failed to allege injury and causation" as previously described in Soderstrom's standing analysis (i.e., just as the Plaintiffs failed to adequately plead injury and traceability for standing, the Plaintiffs failed to adequately plead injury and causation for the negligence claim). Because Soderstrom spent little time developing this argument, so will the Court. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). The Plaintiffs adequately plead standing, and similarly, the Plaintiffs adequately plead causation and injury under the negligence claim. The Plaintiffs plead that Soderstrom disclosed the Plaintiffs' Private Information to third parties. Soderstrom's disclosure satisfies causation, and the disclosure of the Plaintiffs' private information satisfies injury. In conclusion, the Plaintiffs' negligence claim is not subject to dismissal.

**B**

Next, Soderstrom argues that Plaintiffs' invasion of privacy claim should be dismissed under Rule 12(b)(6) for failure to state a claim. (D. 19 at ECF pp. 7–9). Illinois recognizes four ways to state a cause of action for invasion of privacy: "(1) intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) public disclosure of private facts; and (4) publicity placing another in a false light." *Busse v. Motorola, Inc.*, 351 Ill.App.3d 67, 71, 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004). Soderstrom interprets the Plaintiffs' invasion of privacy claim as intrusion upon seclusion. (D. 19 at ECF p. 7). The Plaintiffs respond alleging the common law tort of public disclosure of private facts. (D. 22 at ECF p. 22). Soderstrom replies that the Plaintiffs' claim of public disclosure of private facts fails because the alleged disclosure was not public. This Court agrees.

"Public disclosure of private facts occurs when someone gives publicity to a matter that concerns the private life of another, is highly offensive to a reasonable person, and is not of legitimate public concern." *Theys v. Dental Intelligence, Inc.*, No. 25 CV 2464, 2026 WL 636743, at *21 (N.D. Ill. Mar. 6, 2026) (quoting *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735 (7th Cir. 2023) (additional internal citations omitted). "With regard to the first prong of the tort, the publicity element, the Restatement (Second) of Torts indicates that the required communication must be made to more than just a single person or small group." *Doe v. TCF Bank Ill., FSB*, 302 Ill.App.3d 839, 841, 707 N.E.2d 220, 221 (Ill. App. Ct. 1999) (citing Restatement (Second) of Torts § 652D, Comment a, at 384 (1977) ("[Public Disclosure] . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge")).[10]

---

[10] The Plaintiffs rely on a Northern District of Illinois case saying that whether public disclosure of private facts occurs "is a qualitative inquiry, and so 'while the number of recipients might be a relevant consideration,' more important is the character of the recipient and context of the disclosure." *Theys v. Dental*

Here, the Plaintiffs plead that Soderstrom made an unauthorized disclosure "to the Information Recipients, third-party tech and marketing giants." (D. 1 at ECF p. 51). Moreover, the Plaintiffs plead that the Information Recipients used the Plaintiffs' Private Information to "sell such information to third-party marketers who target [the Plaintiffs] online." *Id.* at ECF p. 9. The Plaintiffs' pleadings do not adequately plead that Soderstrom made a public disclosure. To the contrary, the Plaintiffs' pleadings demonstrate that the Plaintiffs' private information has monetary value because the information was *not* publicly disclosed. According to the Plaintiffs, Soderstrom disclosed the Plaintiffs' Private Information to the Information Recipients for monetary gain. *Id.* at ECF p. 60. Soderstrom could only profit from the disclosure if the disclosed information was private. Also according to the Plaintiffs, the Information Recipients then sold the Plaintiffs' Private Information to third-party marketers. *Id.* at ECF p. 9. Again, if the Information Recipients can profit from further disclosure of the Plaintiffs' Private Information, then Soderstrom's disclosure was not public.

Because the Plaintiffs failed to adequately plead that Soderstrom's disclosure was public, which is an element of the public-disclosure-of-private-facts tort, the Plaintiffs' invasion of privacy claim is dismissed.

**C**

Soderstrom then argues that Plaintiffs' claim for breach of contract, implied breach of contract, and unjust enrichment

---

*Intelligence, Inc.*, No. 25 CV 2464, 2026 WL 636743, at *7 (N.D. Ill. Mar. 6, 2026) (citing *Nabozny v. Optio Sol. LLC*, 84 F.4th 731, 736 (7th Cir. 2023); *Hunstein v. Preferred Collection and Mgmt. Servs., Inc.*, 48 F.4th 1236, 1246–47 (11th Cir. 2022)). This dictum comes from Federal courts, originated by the 11th Circuit and is not supported by the cases from Illinois state courts. To the contrary, Illinois state courts apply the literal definition of "public" that this Court uses. *See Green v. Chi. Trib. Co.*, 286 Ill.App.3d 1, 5, 675 N.E.2d 249, 252 (Ill. App. Ct. 1996); *Poulos v. Lutheran Soc. Servs. of Ill., Inc.*, 312 Ill.App.3d 731, 740–41, 728 N.E.2d 547, 555 (Ill. App. Ct. 2000); *Cordts v. Chi. Trib. Co.*, 369 Ill.App.3d 601, 608, 860 N.E.2d 444, 451 (Ill. App. Ct. 2006). Once again, when applying tort law in Illinois, Federal courts are concerned with the Illinois courts' interpretations. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

should be dismissed under Rule 12(b)(6) for failure to state a claim. (D. 19 at ECF pp. 9–10). In their response, the "Plaintiffs abandon their claims for breach of contract, breach of implied contract, and unjust enrichment." (D. 22 at ECF p. 15 n. 4). Accordingly, Counts III, IV, and V are dismissed without prejudice.

**D**

Soderstrom argues that the Plaintiffs' claim under the Electronic Communications Privacy Act (ECPA) should be dismissed under Rule 12(b)(6) for failure to state a claim. The ECPA provides a private right of action against a party who "intentionally intercepts . . . any . . . electronic communication." 18 U.S.C. § 2511(1)(a). The same is true for a party who intentionally discloses or uses the contents of an intercepted communication. 18 U.S.C. §§ 2511(1)(c) & (d). Under the "one-party exception," a defendant is not liable if the party intercepting the communication "is a party to the communication or where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). The one-party exception does not apply, however, if the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.* This is the crime-tort exemption to the one-party exception. One example of a criminal act that could trigger the crime-tort exemption is disclosing individually identifiable health information to another person in violation of HIPAA. *See* 42 U.S.C. § 1320d-6(a)(3); *see also Stein v. Edward-Elmhurst Health*, No. 23-cv-14515, 2025 WL 580556, at *4 (N.D. Ill. Feb. 21, 2025) ("Courts in this district have recognized that disclosing health information in violation of HIPAA can provide the predicate for a claim under the ECPA.").

Soderstrom does not dispute that the Plaintiffs adequately plead a claim under the ECPA. Rather, Soderstrom argues the one-party exception applies because Soderstrom was a party to the intercepted communication. (D. 19 at ECF pp. 12–13); *see Doe v. Genesis Health Sys.*, No. No. 4:23-cv-

04209, 2025 WL 1000192, at *8 (Mar. 18, 2025) (holding the "tracking technology deployed *by* [d]efendant *effectuated* the sending and acquisition of patient communications" making defendant "a party to the communications.") (emphasis in original). While the Plaintiffs concede that Soderstrom was a party to the intercepted communication, they argue the crime-tort exemption overrides the one-party exception. Specifically, the Plaintiffs argue that Soderstrom intercepted the communication for the purpose of committing a criminal act: to intercept the Plaintiffs' healthcare communications for the purpose of disclosing their Private Information to unauthorized third-party digital advertising companies in direct violation of HIPAA. (D. 1 at ECF p. 60); *see* 42 U.S.C. § 1320d-6(a)(3) ("A person who knowingly . . . discloses individually identifiable health information to another person" commits a crime under HIPAA).

Soderstrom argues that *Nguyen* is analogous. *See Nguyen v. Abbott Lab'ys, Inc.*, No. 24 CV 8289, 2025 WL 2299753, at *6 (N.D. Ill. Aug. 8, 2025). In *Nguyen*, the plaintiffs' ECPA claim was dismissed for failure to state a claim. *Id.* at *1. According to the plaintiffs' complaint, the defendant, a medical-product manufacturer, installed tracking tools on its website collecting and transmitting the plaintiffs' data to unauthorized third parties like Meta and Google when the plaintiffs used the defendant's website to request free trials for a device that manages diabetes. *Id.* The plaintiffs argued that the crime-tort exemption overrides the one-party exception because the defendant intercepted the communications for the purpose of violating HIPAA. *Id.* at *4. The court, however, dismissed the plaintiffs' ECPA claim finding the information the plaintiffs disclosed to the defendant on the website was not HIPAA-protected information. *Id.* at *5 ("[The] plaintiffs' browsing and search activities conveyed an interest in [the defendant's] product, but it's not reasonable to infer these activities conveyed *personal* medical histories."). The *Nguyen* court notes "that every court in this district has found virtually identical allegations involving disclosures of medical

information" to constitute HIPAA-protected information, and this case is distinguished because the defendant is a medical product manufacturer, not a healthcare practitioner. *Id.* at *6 (internal citation omitted) ("Here the plaintiffs navigated [the defendant]'s website as consumers interested in a free trial of a product. That's a step removed from the kind of medical information disclosed between a patient and their healthcare provider.").

Both Plaintiffs and Soderstrom concede that *Nguyen*'s holding is an outlier. *See also Hartley v. U. of Chi. Medical Ctr.*, No. 22-cv-5891, 2024 WL 1886909, at *2 (N.D. Ill. Apr. 30, 2024) (holding plaintiff plausibly alleged that hospital disclosed her health information in violation of HIPAA when she used website to seek specific medical specialists, obtain prescriptions, and conduct research); *Smith v. Loy. U. Medical Ctr.*, No. 23-cv-15828, 2024 WL 3338941, at *6 (N.D. Ill. July 9, 2024) (holding plaintiff plausibly alleged defendant used tracking technologies on its webpages to transmit plaintiff's status as medical patient, their communications with webpage, medical appointments, etc. in violation of HIPAA); *A.D. v. Aspen Dental Mgmt., Inc.*, No. 24 C 1404, 2024 WL 4119153, at *3 (N.D. Ill. 2024) ("Accepting Plaintiffs' allegations as true, as the Court must at this stage, Aspen placed tracking technology on its website with the intent to collect and disclose users' personal health information for purposes of financial gain, in violation of [HIPAA] . . . Plaintiffs plausibly allege that [Defendant] intended to violate the HIPAA when it transmitted Plaintiffs' information to third parties, which is distinct from the improper interception"); *Kurowski v. Rush Sys. for Health*, No. 22 C 5380, 2023 WL 8544084, at *3 (N.D. Ill. 2023) (holding that allegations of sharing medical information were "sufficient to invoke the HIPAA exception-to-the-party-exception" of the ECPA).

Here, the Plaintiffs' ECPA claim is most similar to the many cases denying dismissal where the plaintiff alleges the health-provider defendant uses tracking technologies on the webpage to disclose individually identifiable health information

to third parties for financial gain. *Id.* The Plaintiffs' ECPA claim is distinguishable from *Nguyen* because Soderstrom is a healthcare provider, not a healthcare manufacturer. *See Nguyen v. Abbott Lab'ys, Inc.*, No. 24 CV 8289, 2025 WL 2299753, at *6 (N.D. Ill. Aug. 8, 2025). The Plaintiffs adequately plead that Soderstrom utilized Tracking Technology on the Website; the Plaintiffs used the Website to research medical treatments, schedule appointments, contact providers; and Soderstrom knowingly disclosed the Plaintiffs' Private Information in violation of HIPAA for financial gain. *See* D. 1 at EMP p. 61) ("In acquiring and sending the content of Plaintiffs' and Class members' communications relating to the browsing of Defendant's Website, creation of accounts, participation in Defendant's health screenings, scheduling appointments, and/or purchasing a subscription plan, *Defendant's purpose was tortious and designed to violate federal and state law*") (emphasis added).[11] The Plaintiffs adequately plead the crime-tort exemption to the one-party exception, making the Plaintiffs' ECPA claim not subject to dismissal.

**E**

The Plaintiffs plead that Soderstrom violated Section 10 and Section 45 of the Illinois Personal Information Protection Act (PIPA). Soderstrom argues that both PIPA claims should be

---

[11] Because the Plaintiffs plead that Soderstrom's purpose in disclosing the Private Information was tortious and designed to violate federal law, this case is different than *Genesis Health*. *See Doe v. Genesis Health Sys.*, No. 4:23-cv-04209-JEH, 2025 WL 1000192 (Mar. 18, 2025). In *Genesis Health*, this Court explained that for the crime-tort exemption to apply, "it is not enough that the alleged disclosure may constitute, or result in, a tortious act in violation of federal law." *Id.* at *9. The language in ECPA is clear: the interception must be "for the purpose of committing . . . any tortious act." 18 U.S.C. § 2511(d). "Congress's decision to include that language indicates that the [crime-tort exemption] requires a specific intent that the Defendant knew its acts were in violation of the HIPAA." *Genesis Health*, No. 4:23-cv-04209-JEH, 2025 WL 1000192, at *9. Here, the Plaintiffs plead that Soderstrom disclosed the Private Information for the purpose of violating state and federal law. By contrast, in *Genesis Health*, the plaintiff pleaded the defendant disclosed the personal healthcare information for marketing and advertising purposes. *Id.* While this case and *Genesis Health* have opposite results, the cases do not sit in opposition.

dismissed under Rule 12(b)(6) for failure to state a claim. (D. 19 at ECF pp. 15–16).

**1**

Soderstrom first argues that the Plaintiffs failed to adequately plead that Soderstrom violated Section 10 of PIPA. Under Section 10, "Any data collector that owns or licenses personal information concerning an Illinois resident shall notify the resident at no charge that there has been a breach of the security of the system data following discovery or notification of the breach." 815 Ill. Comp. Stat. 5310/10(a). PIPA defines a "breach" as the "unauthorized acquisition of computerized data that compromises the security, confidentiality, or integrity of personal information maintained by the data collector." 530/5. Soderstrom specifically argues that Soderstrom could not have violated Section 10 because the Plaintiffs failed to adequately plead a breach.

Soderstrom argues that the Plaintiffs' pleading is contrary to a data breach. Here, according to the Plaintiffs' Complaint, Soderstrom intentionally disclosed the Private Information to the Information Recipients. Soderstrom argues that the plain meaning of PIPA suggests a "breach" occurs when the recipient acquires the information without the authorization of the data holder. Here, Soderstrom intentionally disclosed the Private Information to the Information Recipients for monetary gain, meaning Soderstrom authorized the disclosure. The Plaintiffs disagree with Soderstrom's interpretation of PIPA and argue that the relevant inquiry is not whether *Soderstrom* authorized the disclosure but whether *the Plaintiffs* authorized the disclosure. According to the Plaintiffs, a breach occurred because the Information Recipients acquired the Private Information without the Plaintiffs' authorization. According to Soderstrom, a breach did not occur because the Information Recipients acquired the Private Information with Soderstrom's authorization.

The Court agrees with Soderstrom. Under Section 10, the "data collector" has a duty to notify if a breach occurs. Since the data collector has the duty, it logically follows that the

existence of the breach is relative to the data collector. *See Glebiv v. Midwest Gaming & Entertainment, LLC*, No. 23-cv-16225, 2026 WL 579211, at *1 (N.D. Ill Mar. 2, 2026) (holding plaintiff adequately pleaded PIPA claim where third party gained unauthorized access to defendant's network system and defendant delayed in notifying plaintiff). Moreover, Section 10 describes the breach as "a breach of the security of the system data." 815 Ill. Comp. Stat. 5310/10(a). No breach of the security occurs if the information is freely given. The plain language of Section 10 of PIPA refers to a security breach that results in an unauthorized disclosure. That is not the situation that the Plaintiffs plead because Soderstrom intentionally disclosing the Private Information is not "a breach of the security of the system data." The Plaintiffs failed to adequately plead a breach, meaning Soderstrom had no duty to notify under Section 10.

**2**

Soderstrom also argues that the Plaintiffs failed to adequately plead Section 45 of PIPA. Under Section 45, "A data collector that owns or licenses, or maintains or stores but does not own or license, records that contain personal information concerning an Illinois resident shall implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification, or disclosure." 815 Ill. Comp. Stat. 5310/45(a).

Here, the Plaintiffs adequately plead that Soderstrom stores the Plaintiffs' Private Information. *See supra* Section IV.A (finding the Plaintiffs adequately pleaded that Soderstrom disclosed the Plaintiffs' PHI and IIHI). Consequently, under Section 45, Soderstrom has a duty to implement and maintain reasonable security measures over the Plaintiffs' Private Information. *See* 5310/45(a). The Plaintiffs adequately plead that Soderstrom breached that duty when Soderstrom failed to protect the Private Information by using it for financial gain by disclosing it to the Information Recipients. *See Smith v. Loyola University Medical Center*, No. 23 CV 15828, 2024 WL 3338941, at *7 (N.D. Ill. July 9, 2024) (holding plaintiff

adequately pleaded defendant violated the duty to maintain reasonable security measures under Section 45 of PIPA when defendant used tracking technologies to disclose plaintiff's healthcare information to third parties). In conclusion, the Plaintiffs adequately plead Section 45 of PIPA.

**3**

Regardless of the pleading's adequacy, the Plaintiffs' PIPA claim cannot survive dismissal because PIPA does not create a private cause of action with a statutory remedy. Private citizens can enforce PIPA, but the proper avenue is to sue under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA). *See* 815 Ill. Comp. Stat. 5310/20 ("A violation of [PIPA] constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act."). Here, the Plaintiffs are trying to sue Soderstrom for a PIPA violation, but the Plaintiffs sue directly under PIPA. Because PIPA does not create a private cause of action with a statutory remedy, the Plaintiffs' PIPA claim must be dismissed. The Plaintiffs' PIPA claim is dismissed without prejudice.

**V**

For the reasons set forth *supra*, Soderstrom's Motion to Dismiss is GRANTED without prejudice for Counts II, III, IV, V, and VII. Counts I and VI may proceed. The Plaintiffs shall have leave to amend their Complaint within 14 days if they believe they can state a claim in accordance with this Order.

Should a party file a motion for reconsideration which is subsequently denied by the Court, the party who filed the motion will be responsible for the attorneys' fees of the opposing party related to their response to the motion for reconsideration.

*It is so ordered.*

Entered on November 17, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE